UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 24 2006 ★

P.M. \_\_\_\_\_
TIME A.M. \_\_\_\_\_

UNITED STATES OF AMERICA )
)
v.                                    ) No. 06-CR- 644 (ILG)
)
ALEXANDER DZEDETS,      )
 also known as "Sasha        )
 Dzedets,"                           )
_____ )

## AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION

I, Theodore Cacioppi, being duly sworn, depose and state:

1. I am a citizen of the United States residing in the State of New York.

2. I am a Special Agent employed by the United States Federal Bureau of Investigation (FBI). In that capacity, I investigate all federal criminal offenses, including fraud and embezzlement.

3. In the course of my duties as a United States FBI Agent, I investigated the case United States v. ALEXANDER DZEDETS and others. As one of the case agents assigned to this investigation, I am familiar with the facts of the investigation involving the criminal activities of DZEDETS. I have learned of these facts through, among other things, reviewing documents, speaking with victims, and interviewing participants in the scheme. DZEDETS, along with several others, established a criminal boiler room operation. Their business, named A.S. Templeton ("AST"), purported to invest in the foreign currency exchange market and fraudulently obtained millions of dollars from hundreds of investors.

4. One of the participants in the fraud scheme was Michael Vitebsky. I have spoken to Vitebsky on several occasions. Vitebsky has told me that in approximately September 2000, Alexander DZEDETS and Boris Shuster, another co-conspirator, met with him in a bar in

1

Brooklyn, New York to discuss setting up a new business as a foreign currency trading firm, AST. At that meeting, they discussed that DZEDETS name could not be used because he was a Canadian citizen. DZEDETS and Shuster proposed that Michael Vitebsky would be hired as president of the new company, that he would be paid $20,000 a month, and that he would do the work of setting up the new business, and he would put any documentation in his name.

5. According to Vitebsky, DZEDETS and Shuster made the arrangements to have the AST corporation formed. I have reviewed the Certificate of Incorporation and have learned that AST was incorporated on October 4, 2001 in the state of Delaware. DZEDETS and Shuster made arrangements for Vitebsky to sign paperwork to become AST president. Vitebsky opened the bank accounts for the new business. DZEDETS and Shuster located the office space at 1911 Richmond Avenue, Staten Island, New York, paid three months rent in advance, and had Vitebsky actually sign the lease.

6. DZEDETS and Shuster also met with Steve Moore, an individual who owned a company called Itradecurrency. During the course of the investigation, I have met and spoken with Steven Moore, and he provided this information to me. DZEDETS and Shuster contracted with Moore to trade the small portion of the fraudulently obtained money which was actually traded and not diverted to DZEDETS's and Shuster's use.

7. Beginning in about December 2000, Boris Shuster, Alexander DZEDETS, and others began soliciting customers to invest at AST purportedly for the purpose of trading in the foreign currency exchange market. Although AST was neither licensed nor registered as an investment advisor, AST held itself out to the investing public as a brokerage firm that managed investments for retail customers in the foreign currency exchange market. To effect this illegal scheme, DZEDETS and his co-conspirators made and caused other AST brokers to make, false and fraudulent representations to potential investors in induce them to open accounts with and entrust funds to AST for the purported purpose of trading in the foreign currency exchange market. I have seen these statements in AST literature sent to customers. Additionally, I am aware of their contents by speaking with Vitebsky and other co-conspirators.

8. According to Vitebsky, DZEDETS trained and directed the phone callers to make false statements over the telephone to solicit investments from potential victims. DZEDETS made

2

most of the day-to-day executive decisions, and was overall responsible for secretaries and other executive matters. If a prospective investor expressed interest in AST's purported foreign currency exchange currency trading, then the caller would complete a form, causing a secretary to send to the prospective investor a package containing AST promotional materials and an account opening document. I have spoken with a secretary who informed me that her job was to send out the promotional materials. After AST promotional materials were sent to the prospective investors, DZEDETS and others directed brokers to solicit from the prospective investors an initial or second investment. After an investor established an account and made an initial investment, DZEDETS and others had a practice of enticing the investors to make additional, more substantial investments.

9. In order to mislead prospective investors about AST, AST materials, such as business cards and letterhead listed the words "New York," "Tokyo," "London," and "Zurich." Contrary to the false impression created by these words, AST had no offices in Tokyo, London or Zurich.

10. Other false and fraudulent misrepresentations DZEDETS and his co-conspiractors made to investors included statements that: (i) AST brokers had many years experience working in the foreign currency exchange market when, in truth, the brokers had little or no experience in the foreign currency exchange market ; (ii) AST historically generated for its customers profits as high as 42 percent per year when, in truth, AST generated little or no profits for its customers from trading in the foreign currency exchange market; (iii) AST customer investment funds were pooled together and used to invest in the foreign currency exchange market when, in truth, AST failed to transfer a large majority of the investors funds and instead diverted the majority of the money to pay the conspirators business and personal expenses.

11. According to Vitebsky, after DZEDETS and others convinced customers to invest money, they would send a letter to the customer confirming the investment. Vitebsky was the signatory on those letters. For example, on October 24, 2001, AST sent a letter to customer Clarence C. Graf, Jr., located in Temple City, California confirming a deposit of $20,000. At the end of that month, they also sent a statement to him falsely reflecting that his account had realized a gain that month. Mr. Graf provided copies of the letter and the account statement. Another conspirator, Boris Tsigalnitsky, prepared the false account statements reflecting that the

3

clients' accounts had realized gains. DZEDETS and other created and caused these false, fraudulent, and misleading account statements which detailed fictitious trading activity and profits to be created and mailed in order to hide the fact that a large portion of the customer funds were being diverted.

12. According to Tsigalnitsky, DZEDETS and Shuster would tell him how much gain they wanted to show for a particular month. Tsigalnitsky would then do the mathematical computations and actually prepare the account statement documents. DZEDETS would then cause the statements to be mailed to the customers.

13. On February 22, 2002, AST sent a letter to another customer, Edgar L. Collins that confirmed a deposit of $21,000. At the end of that month, they sent a statement to Mr. Collins reflecting a huge loss to the account. Mr. Collins provided copies of the letter and the account statement.

14. In the month of February 2002, DZEDETS and his co-conspirators told Mr. Collins, and most other AST customers, in substance, that due to market forces, AST had suffered sudden huge catastrophic losses. DZEDETS and his co-conspirators created and caused to be created the false, fraudulent and misleading account statements, which detailed fictitious trading activity and losses supposedly incurred as a result of the trading activity to further hide the diversion of customer funds. In truth, DZEDETS and others diverted most of the investor funds (i) to pay their own personal expenses, (ii) to pay AST's operating expenses and, (iii) to personal and unrelated corporate accounts under their control and to other entities out of the United States.

15. One such entity was 1430214 Ontario Limited ("Ontario"), which was located in Canada. Ontario held an account at Royal Bank of Canada, to which AST funds were transferred. We have secured copies of account opening documents from the Royal Bank of Canada, and those documents show that the defendant DZEDETS was the authorized signatory on the Ontario account and 100% owner of Ontario. AST bank records, which we have secured, show approximately $500,000 was sent from AST's accounts to the Ontario account at the Royal Bank of Canada.

16. From about October 2000 through March 2002, DZEDETS and AST received from over 300 retail customers approximately $10,000,000. These funds were deposited into AST's

4

client accounts. During this same time period, DZEDETS and his coconspirators transferred in excess of $4,300,000 from accounts held by AST to their own accounts or those controlled by their associates. Of that amount, as stated above, the Ontario account at Royal Bank of Canada received approximately $500,000 from AST.

17. Also during this period, of the $10,000,000 DZEDETS and the others received from retail customers, DZEDETS and the others transferred a net total of approximately $1,600,000 to AST's operating account. When DZEDETS and the others liquidated the investment pool, they returned only approximately $3,000,000 to the customers as their proportionate share of what remained after the purported losses from trading in the foreign currency exchange markets.

18. Alexander DZEDETS was born in Russia or the Ukraine on 01 October 1974. He has an approximate height of 177 centimeters, weighs approximately 113 kilograms, and has brown eyes, red hair and a thick build.

This affidavit is sworn before a U.S. Magistrate Judge of the United States District Court, Eastern District of New York, who is a person duly empowered to administer an oath for this purpose.

Dated: Brooklyn, New York
October 17, 2006

_____
Theodore Cacioppi
Special Agent
U.S. Federal Bureau of Investigation

Sworn and subscribed to before me,
this 17th day of October 2006

_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York